1
2
3                    UNITED STATES DISTRICT COURT
4                         DISTRICT OF NEVADA
5                               * * *
6   CURB MOBILITY, LLC,                    Case No. 2:18-cv-02416-MMD-EJY
7                          Plaintiff,                   ORDER
8        v.
    KAPTYN, INC., *et al.*,
9
                           Defendants.
10

11  **I.    SUMMARY**

12        Plaintiff Curb Mobility, LLC alleges that Defendants Kaptyn, Inc., Triad

13  Transportation Technologies, LLC, Whittlesa Blue Cab Company, and Desert Cab, Inc.

14  infringe U.S. Patent No. 6,347,739 (the "'739 Patent") because they have systems in their

15  taxicabs that allow them to accept credit cards. (ECF No. 23 ("FAC").) Before the Court is

16  Defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure

17  12(c), arguing the '739 Patent is not directed to patentable subject matter under 35 U.S.C.

18  § 101, lacks any additional inventive concept, and is thus invalid as a matter of law (the

19  "Motion").[1] (ECF No. 47.) Because the Court is persuaded by Defendants' argument that

20  the '739 Patent is directed to an abstract idea, and lacks any additional inventive concept

21  that would make it patent eligible—and as further explained below—the Court will grant

22  the Motion.

23  **II.   BACKGROUND**

24        The following facts are adapted from the FAC.[2] (ECF No. 23.) Plaintiff alleges that

25  Defendants, taxicab companies that operate in Nevada, infringe the '739 Patent, titled

26  ///

27  _____

28        [1]Plaintiff filed a response (ECF No. 49), and Defendants filed a reply (ECF No. 50).

"System for Credit Card Acceptance in Taxicabs," by making, using, or selling a system for credit card acceptance in taxicabs in their taxi fleets that "includes a taxi meter, a credit-debit card reader, and a modem for wireless communications[.]" (*Id.* at 4.) Plaintiff attached pictures to its FAC showing the system Defendants use in their taxicabs (ECF No. 23-2), which "includes a taxi meter such as the Triad/Kaptyn DT5 meter, a credit-debit card reader such as the Ingenico iPP320, and a generic modem as shown in the photographs[.]" (*Id.* at 4.) Plaintiff also attached pictures to its FAC (ECF No. 23-3) showing how Defendants' system allegedly infringes the '739 Patent's method claims. (ECF No. 23 at 4-5.) Plaintiff put Defendants on notice of the '739 Patent by sending them cease and desist letters. (*Id.* at 5-6.) Plaintiff alleges Defendants infringe the '739 Patent under direct, contributory, and inducement infringement theories. (*Id.* at 6-9.)

Plaintiff also attached the '739 Patent to its FAC. (ECF No. 23-1.) The '739 Patent includes two independent claims, though independent claim 11 is basically independent claim 1—a system claim—written as a method claim. (*Id.* at 11.) Claim 1 claims a system for accepting credit cards in taxicabs consisting of three components that work together: (1) a taximeter "having application programs at least some of which mandate a sequential exchange of electronic information" between the passenger and the driver about the fare; (2) a credit-debit card reader; and (3) a wireless modem. (*Id.*) Claim 11 makes claim 1 a method claim by claiming a method for charging a fare to a taxicab passenger consisting of installing in the taxi: (1) a taxicab meter capable of running the application programs described above; (2) a credit-debit card reader; and (3) a wireless modem. (*Id.*)

The remainder of the '739 Patent's claims are dependent claims adding features to claim 1's system or claim 11's method. (*Id.*) Claims 2-10 depend from claim 1. (*Id.*) Claim 2 specifies that the credit-card reader can accept smart cards and private-label cards in

---

[2]The Court briefly recites the procedural history of this case because it is not particularly relevant to the Motion. Defendants filed a motion to dismiss (ECF No. 21) Plaintiff's original complaint (ECF No. 1), but that motion was rendered moot by Plaintiff's filing of the FAC (ECF No. 23). Defendants then moved to dismiss the FAC (ECF No. 33), in a motion that did not raise a Section 101 argument, but the Court denied that motion (ECF No. 40). Defendants filed an answer (ECF No. 43), and this Motion followed.

addition to credit and debit cards. (*Id.*) Claim 3 adds a display screen. (*Id.*) Claim 4 adds a printer. (*Id.*) Claim 5 adds a keyboard. (*Id.*) Claim 6 specifies that the modem can work over the network of a wireless network carrier. (*Id.*) Claim 7 specifies that the modem can communicate with an optional second communiations network. (*Id.*) Claim 8 specifies that the modem can communicate with a bank's network to verify credit-debit card information. Claim 9 specifies that the modem can communicate with a taxicab network's home base. (*Id.*) Claim 10 specifies that the modem can communicate with the world wide web. (*Id.*)

Claims 12-18 depend from claim 11. (*Id.*) Claim 12 adds a keyboard and a display screen. (*Id.*) Claim 13 further modifies claim 12 by adding an antenna and outlining a process through which the system verifies the passenger's credit-debit card information with the passenger's bank. (*Id.*) Claim 14 adds a printer to claim 11. (*Id.*) Claim 15 adds to claim 11 by outlining a process through which the passenger can get a printed receipt. (*Id.* at 11-12.) Claim 16 specifies that the method of claim 11 involves exchanging signals with the internet. (*Id.* at 12.) Claim 17 specifies that the method of claim 11 involves exchanging signals with the taxicab's home base. (*Id.*) Claim 18 specififes that the method of claim 11 involves exchanging signals with other taxicabs. (*Id.*)

## III.   LEGAL STANDARDS

### A.   Motion for Judgment on the Pleadings Under Rule 12(c)

"Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citation and internal quotation marks omitted). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Id.* (citation and internal quotation marks omitted).

Under Rule 12(b)(6), a court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). That is insufficient. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

## B.     Patentable Subject Matter and the *Alice* Standard

Under Section 101 of the Patent Act, an inventor may obtain a patent on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Courts, however, "have long held that this

4

provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The concern behind these excepted categories is "one of preemption"—if an inventor could obtain patent protection over these "building blocks of human ingenuity," then the patent scheme would work to undermine, not promote, future innovation. *Id.* at 216. But courts are careful to balance concerns over preemption with the fact that "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). Thus, where an invention moves beyond an abstract idea by applying it "to a new and useful end," the invention will meet the Section 101 standard. *Alice*, 573 U.S. at 222 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

In light of these competing concerns, the Supreme Court has developed a two-part test to assess whether a patent covers an abstract idea. First, courts must determine whether a patent's claims are directed to a "patent-ineligible concept," such as an abstract idea. *Id.* at 217. Abstract ideas may be "preexisting, fundamental truth[s]" such as mathematical equations, and also encompass "method[s] of organizing human activity" or "longstanding commercial practice[s]" like intermediated settlement or risk hedging. *Id.* at 219.

Second, if the court "determine[s] that the patent is drawn to an abstract idea or otherwise ineligible subject matter," then the court examines "whether the remaining elements, either in isolation or combination with the non-patent-ineligible elements, are sufficient to 'transform the nature of the claim into a patent-eligible application.'" *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366-67 (Fed. Cir. 2015) (quoting *Alice*, 134 S. Ct. at 2358).

Whether a patent is eligible under Section 101 is a question of law that may be determined before the summary judgment stage of litigation. *See Accenture Glob. Servs.,*

5

*GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013) (reviewing a Section 101 determination *de novo*, but noting that the legal issue on review "may contain underlying factual issues"); *see also Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348-49 (Fed. Cir. 2015) (affirming a district court's granting of a motion to dismiss on Section 101 grounds); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1375-76 (Fed. Cir. 2017) (affirming a district court's grant of motion for judgment on the pleadings on Section 101 grounds).

## IV.    DISCUSSION

The Court addresses both steps of the *Alice* inquiry below, and then addresses Plaintiff's contention that factual issues make resolution of this case inappropriate at this stage. As further explained below, the Court finds at *Alice* step one that the '739 Patent is directed to an abstract idea—the longstanding commercial practice of paying for public transit, here, paying for a taxicab with a credit card. At *Alice* step two, the Court finds that nothing else in the patent—a mere assemblage of admittedly known components—brings the '739 Patent into the realm of patent-eligibility.

### A.    *Alice* Step One

At step one, Defendants argue that all claims of the '739 Patent are directed to the abstract idea of paying for a taxicab with a credit card, which is a version of the longstanding commercial practice of paying for public transit. (ECF No. 47 at 10-17.) Plaintiff counters that the asserted claims of the '739 Patent are not directed to an abstract idea because they are directed to a system and method, which are generally patent-eligible, and because "they claim computerized components performing unordinary functions above and beyond the prior art for the individual components to improve the functionality of the system as a whole." (ECF No. 49 at 14.) The Court agrees with Defendants.

The Court finds the claims of the '739 Patent are all directed to the abstract idea of paying for a taxicab with a credit card. (ECF No. 23-1 at 11-12.) *See also Smart Sys.*, 873 F.3d at 1371 (affirming the district court's finding that the asserted claims of four patents

were directed to the abstract idea of "paying for a subway or bus ride with a credit card"). Further, Plaintiff's arguments at *Alice* step one miss the mark. Courts have invalidated many patents claiming systems and methods under Alice, so the type of patent claims at issue do not show that the asserted claims of the '739 Patent are not directed to an abstract idea. (ECF No. 49 at 14 (making the argument).) *See also Smart Sys.*, 873 F.3d at 1368 (describing the ultimately invalidated patent claims as covering systems and methods). And Plaintiff's argument that the asserted claims are not directed to an abstract idea because they describe computerized components that go beyond the prior art to improve the functionality of the claimed system (ECF No. 49 at 14) "is misplaced here because we consider the application of an abstract idea under *Alice* step two, not *Alice* step one." *Smart Sys.*, 873 F.3d at 1373. The Court therefore finds that the claims of the '739 Patent are all directed to the abstract idea of paying for a taxicab with a credit card and moves on to *Alice* step two.

## B. *Alice* Step Two

At step two, Defendants argue that the claims of the '739 Patent lack an inventive concept because "the claims and specification of the '739 Patent recite computer components that perform well-understood, routine and conventional functions." (ECF No. 47 at 19, 19-23.) Plaintiff counters that the asserted claims of the '739 contain an inventive concept—application programs described in several claims that "mandate a sequential exchange of electronic information." (ECF No. 49 at 20.) Defendants reply that this element does not save the the '739 Patent because "*Alice* stands for the very principle that reciting preexisting computerized components to transmit electronic information between one another is not inventive." (ECF No. 50 at 5.) The Court again agrees with Defendants.

This is not a close call. The asserted claims of the '739 Patent lack an inventive concept that could have saved them from invalidation under *Alice*. At the heart of all of the asserted claims is a system consisting of a taxicab meter, a credit-debit card reader, and a modem. (ECF No. 23-1 at 11-12.) The specification of the the '739 Patent makes it clear

7

that these elements are conventional or otherwise known in the art. (*Id.* at 8-9 (describing the taxicab meter as one "known in the art" that "provides traditional taxicab functions," the modem as one that communicates with networks "known in the art" to access routers and proxy servers over the world wide web in a manner "known in the art," and the credit-debit card reader as "conventional").) And as described above, claim 11 is merely a method claim version of the system claim 1. Thus, as described in the specification of the '739 Patent itself, the core system/method of the patent is simply a combination of three known elements.

The Court does not find that the addition of known technological elements like printers, displays, and the ability to connect to the internet or other taxis described in the dependant claims bring the '739 Patent within the realm of patent-eligibility. (ECF No. 23-1 at 11-12.) The phrase "known in the art" is used ten times in the specification to describe most if not all elements of each of the asserted claims, including the dependant claims. (*Id.* at 8-10.) Adding known technological elements from the dependant claims to the known technological elements from the indipendent claims does not make the claims patent-eligible. *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348-49 (Fed. Cir. 2014) (finding as such, noting that "all of the additional limitations" "recite well-known, routine, and conventional functions of scanners and computers").

In addition, while the Court does not disagree with Plaintiff's argument that conventional components combined in an unconventional manner may be patent eligible (ECF No. 49 at 16),[3] Plaintiff fails to show how any of the conventional components

///

---

[3]For some reason, Plaintiff makes this argument at *Alice* step one, citing cases discussing claims that are not abstract because they are directed to improvements in computer functionality itself, such as *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) ("the claims here are directed to a technological improvement: an enhanced computer memory system."). (ECF No. 49 at 16-18.) But that line of cases simply does not apply here, because the '739 Patent is not directed to a technological improvement in computer functionality. The '739 Patent claims a system and method for accepting credit cards in taxicabs. (ECF No. 23-1.)

described in the '739 Patent's specification were combined in an unconventional manner. Plaintiff simply states the claims cover a "process previously unknown and unapplied in the context of taxi cab fare payment" in a conclusory manner, without explaining how. (ECF No. 49 at 17.) And as Defendants point out in their reply (ECF No. 50 at 6-9), while Defendants' Motion contains detailed, claim-by-claim analysis of the '739 Patent with many references to the specification itself (ECF No. 47), Plaintiff's responsive brief lacks any citations to the '739 Patent's specification (ECF No. 49). The Court will not simply take Plaintiff's word for it. Plaintiff has failed to explain how the conventional elements described in the '739 Patent are combined in an unconventional way.

Moreover, the Court is unpersuaded the application programs that "mandate a sequential exchange of electronic information" make the '739 Patent patent-eligible. (ECF No. 49 at 20.) The specification of the '739 Patent describes them as consisting of generic computer storage mechanisms known at the time. (ECF No. 23-1 at 9, specifically at 3:22-39.) In addition, "[t]hat a computer receives and sends the information over a network—with no further specification—is not even arguably inventive." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014). Indeed, the "computers in *Alice* were receiving and sending information over networks connecting the intermediary to the other institutions involved, and the Court found the claimed role of the computers insufficient." *Id.* This Court is therefore unpersuaded by Plaintiff's primary argument at *Alice* step two.[4]

---

[4]Plaintiff also cautions the Court against hindsight bias. (ECF No. 49 at 20.) But computer programs that mandate a sequential exchange of electronic information reflect the type of basic computer functionality also invalidated in *Alice* itself. *See Alice*, 573 U.S. at 225 ("The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are well-understood, routine, conventional activities previously known to the industry.") (citation, internal quotation marks, and punctuation omitted). Moreover, as part of its effort to situate the Court around the time of the purported invention embodied in the the '739 Patent—which would be more relevant to anticipation or obviousness anyway—Plaintiff provided the Court with a *New York Times* article from July 14, 2000, which describes a system and method that appears similar to the claimed system and method, but then concludes, "[s]everal cities, including San Diego and Los Angeles, have used similar credit card systems in many cabs for years[.]" (ECF No. 49-1 at 3.) Even if the content of the article was relevant to the Court's *Alice* inquiry, the article tends to show the patent was either obvious or not novel. Thus, the Court finds Plaintiff's warnings against hindsight bias unpersuasive.

In sum, the '739 Patent is invalid under *Alice* and its progeny. *See Smart Sys.*, 873 F.3d at 1375-76 (affirming the district court's invalidation of a very similar set of patents under *Alice* on a motion for judgment on the pleadings).

## C.    Factual Issues

The parties also dispute whether any factual issues remain precluding the entry of judgment at this time. (ECF Nos. 47 at 23-24, 49 at 21-23, 50 at 12-13.) The Court finds that no factual issues exist to preclude disposition of this case, nor does it find claim construction necessary. "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction*, 776 F.3d at 1349 (citation omitted). This is one of those cases. The basic character of the claimed subject matter is not complicated. The Court finds it has a sufficient grasp on the subject matter to rule now. *See, e.g.*, *Glob. Cash Access, Inc. v. NRT Tech. Corp.*, Case No. 2:15-cv-00822-MMD-GWF, 2016 WL 1181669, at *4 (D. Nev. Mar. 25, 2016) (finding no factual issues prevented the Court from granting a motion to dismiss based on *Alice*). And as Defendants point out, they relied in pertinent part on Plaintiff's proposed claim construction in their Motion anyway. (ECF No. 50 at 13.)

As Defendants argue (ECF No. 47 at 24), all of Plaintiff's claims, regardless of infringement theory, must fail because—as explained above—Plaintiff has asserted an invalid patent. The Court will therefore direct entry of judgment in Defendants' favor and close this case.

## V.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendants' Motion.

_____

10

It is therefore ordered that Defendants' motion for judgment on the pleadings (ECF No. 47) is granted. U.S. Patent No. 6,347,739 is invalid under *Alice* and its progeny.

The Clerk of Court is directed to enter judgment in Defendants' favor, and in accordance with this order, and close this case.

DATED THIS 21st day of January 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE